UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA H. GORDON,

    Plaintiff,

v.                                                        Case No. 8:18-cv-829-T-SPF

ANDREW M. SAUL,[1]
Commissioner of the Social
Security Administration,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claims for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

On January 15, 2015, Plaintiff filed an application for DIB and SSI (Tr. 250–53). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 162–76). The ALJ held a hearing at which Plaintiff appeared and testified (Tr. 125–58). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

disabled and, accordingly, denied Plaintiff's claims for benefits (Tr. 19–38). Subsequently, Plaintiff requested review from the Appeals Council, which was denied (Tr. 1–7). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## FACTUAL BACKGROUND AND THE ALJ'S DECISION

Plaintiff, who was born in 1969, claimed disability beginning January 5, 2015 (Tr. 22, 32). Plaintiff obtained a high school education (Tr. 32). Plaintiff's past relevant work experience included work as a cashier, payroll clerk, and as an accounting clerk (Tr. 32). Plaintiff alleged disability due to depression, anxiety, post-traumatic stress disorder ("PTSD"), diabetes, polycystic ovarian syndrome, chronic kidney disease, arthritis, scoliosis, and bradycardia (Tr. 163, 139–45).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since the third-quarter of 2015 (Tr. 24). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: chronic kidney disease, diabetes mellitus, chest pain, essential hypertension, bradycardia, obesity, depression, and anxiety (Tr. 25). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with the following additional limitations: occasional climbing of ramps or stairs; no

climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; must avoid concentrated exposure to extreme heat, hazardous machinery and unprotected heights; and limited to performing simple, routine, and repetitive tasks, and no more than frequent contact with supervisors, co-workers, and the general public (Tr. 27).

After considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 32). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy (Tr. 33). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 33).

## **LEGAL STANDARD**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a

"sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.

*Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## **ANALYSIS**

Plaintiff raises five issues on appeal: (1) whether the ALJ failed to consider the effects of Plaintiff's alleged medically necessary work absences in assessing Plaintiff's RFC; (2) whether the Appeals Council properly considered the new evidence produced by Plaintiff after the ALJ's decision; (3) whether the ALJ properly assessed the opinion of the State agency psychologist, Dr. Brian McIntyre, Ph.D.; (4) whether the ALJ properly considered the effects of the combination of impairments in assessing Plaintiff's RFC; and (5) whether the ALJ properly assessed Plaintiff's mental impairments. For the reasons that follow, the Court finds no grounds for reversal or remand.

I.   **Plaintiff's RFC and Absenteeism from Work**

Plaintiff argues that the ALJ failed to consider the effects of her work absences due to her medically determinable impairments when assessing her RFC (Doc. 10 at 8; Tr. 156). The Commissioner counters that Plaintiff failed to show her voluntary visits to the emergency room during working hours were medically necessary (Doc. 25 at 13).

A RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis eight hours per day for five days per week or on an equivalent schedule. Social Security Ruling ("SSR") 96-8p (1996). Absenteeism from work is not a medically determinable impairment or a functional limitation or restriction that results from it. *See Cherkaoui v. Commr. of Soc. Sec.*, 678 F. App'x. 902, 903 (11th Cir. 2017) ("The number of medical appointments [a plaintiff] attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities"). However, absenteeism from work resulting from a plaintiff's need for treatment may constitute evidence that such plaintiff is unable to perform work activity on a regular and continuing basis or on an equivalent schedule. *See* SSR 96-8P ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as: . . . The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine)); *see also Deandrea v. Berryhill*, 8:17-CV-2195-T-AEP, 2019 WL 1376520, at *3 (M.D. Fla. Mar. 27, 2019) (stating that in assessing a Plaintiff's RFC, an ALJ must consider the effects of a claimant's treatment in conjunction with the other evidence of record, and that such consideration is especially

important where a plaintiff required several appointments for treatment of her impairments each month); *William Murray, Pl., v. Andrew M. Saul, Commr. of Soc. Sec., Def.*, 8:18-CV-947-T-AEP, 2019 WL 3928857, at *4 (M.D. Fla. Aug. 20, 2019) (finding that an ALJ did not err in considering the frequency of the plaintiff's hospitalizations and medical treatments in assessing his RFC).

Here, the ALJ properly considered Plaintiff's hospitalizations in assessing Plaintiff's RFC. The ALJ explicitly discussed Plaintiff's chronic issues with kidney disease but noted that Plaintiff stated that she had been hospitalized only once for kidney stones (Tr. 28, 140). The ALJ also noted that Plaintiff had no overnight hospitalizations due to her diabetes (Tr. 28). The ALJ also considered notes from Plaintiff's emergency room visits on August 14, 2016, September 12, 2016, and January 25, 2017, related to Plaintiff's coronary artery disease and bradycardia but noted that the evidence did not reveal any significant abnormalities of Plaintiff's cardiovascular or respiratory system (Tr. 29, 610, 785–86). Particularly, as to Plaintiff's September 2016 emergency room visit, the ALJ noted that a radiographic study described Plaintiff's cardiac silhouette as normal (Tr. 29, 768). Similarly, as to the January 25, 2017 visit to Morton Plant Hospital, radiographic studies of Plaintiff's chest did not reveal any significant abnormalities (Tr. 29, 806–08). As argued by the Commissioner, the record does not indicate that Plaintiff's visits to the emergency room were medically necessary or, if medically necessary, were expected to recur or cause any further limitations to those included in Plaintiff's RFC assessment.

In addition to discussing Plaintiff's hospitalization while assessing Plaintiff's RFC, the ALJ also considered Plaintiff's testimony that her work absences were caused by depression and anxiety arising from traumatic events from her past (Tr. 25, 26, 28, 138, 151). However, the ALJ properly discounted Plaintiff's testimony noting that, despite her anxiety, Plaintiff maintained substantial gainful employment for many years after the occurrence of Plaintiff's alleged traumatic events and nothing in the record demonstrated that Plaintiff's anxiety had worsened (Tr. 25, 26). S*ee Martz v. Commr., Soc. Sec. Admin.*, 649 F. App'x. 948, 961 (11th Cir. 2016) (stating that under the applicable regulations work perform during the period a claimant believe she may be disable, "even if the work does not constitute substantial gainful activity, may show that the claimant is able to do more than she actually did"). Further, the ALJ noted that despite Plaintiff's allegations that she suffered three panic attacks a month, the evidence did not support "the frequency of the panic attacks" (Tr. 26). The Court finds that in assessing Plaintiff's RFC, the ALJ properly considered Plaintiff's hospitalizations and absences from work to the extent it was required by the regulations. Nothing in the record indicates that Plaintiff's hospitalizations were expected to recur with such frequency so as to limit Plaintiff's ability to perform work activity on a regular and continuing basis or an equivalent schedule. *See Cherkaoui*, 678 F. App'x at 904 (stating that the number of Plaintiff's medical appointments was not an appropriate consideration for assessing Plaintiff's RFC and finding that "nothing in the record indicates that [plaintiff] was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work."). As a result, the Court finds no error as to this issue.

## II. Evaluation of New Evidence by the Appeals Council

Plaintiff argues that the Appeals Council failed to properly consider the new evidence provided by Plaintiff, including records of three more trips to the hospital that occurred after the date of the hearing and before the date of the ALJ's decision. The Commissioner argues that the Appeals Council was not required to review Plaintiff's case because the Appeals Council properly found that "there was not a reasonable possibility that Plaintiff's newly submitted evidence would change the outcome of the ALJ's decision" (Doc. 25 at 16).

The Appeals Council will review the ALJ's decision if a claimant submits additional evidence that is new, material, and relates to the period before the ALJ's decision. 20 C.F.R §§ 404.970(a)(5), 416.1470(a)(4) (2017).[2] Evidence is new when the claimant submits it to the Appeals Council after the ALJ's decision. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (discussing evidence claimant submitted to the Appeals Council after the ALJ's decision); *Hargress v. Soc. Sec. Admin, Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (same). Evidence is material if a reasonable probability exists that the new evidence would change the administrative result. *Washington*, 806 F.3d at 1321 (quotation and citation omitted). And evidence is chronologically relevant if it "relates to the period on or before the date of [the ALJ's]

---

[2] These regulations apply to cases in which the ALJ's Decision was issued on or before January 17, 2017. *See Brady v. Heckler*, 724 F.2d 914, 918–19 (11th Cir. 1984) (applying regulation in effect when the final decision issued at administrative level).

9

decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2017); *Hargress*, 883 F.3d at 1309 (citations omitted).

The Eleventh Circuit has consistently rejected the notion that the Appeals Council must articulate a detailed explanation when denying a request to review and to consider newly submitted evidence. *See Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852-53 (11th Cir. 2015) (concluding that the Appeals Council is not required to make specific findings of fact when it denies review, regardless of whether the new evidence is deemed cumulative or not chronologically relevant); *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784–85 (11th Cir. 2014) (concluding that, where the Appeals Council accepted the new evidence and stated that it denied review because the additional evidence failed to establish error in the ALJ's decision, the Appeals Council adequately reviewed the new evidence and was not required to provide a detailed rationale for denying review).

The Appeals Council indicated that it considered the evidence submitted by Plaintiff, including medical records from Rose Radiology, dated May 19, 2015; medical records from Florida Health, dated June 26, 2017 to July 26, 2017; and medical records from Morton Plant Hospital, dated May 9, 2017 to November 6, 2017. The Appeals Council, however, found that the evidence did not show a reasonable probability that it would change the outcome of the decision (Tr. 2). In other words, the Appeals Council found Plaintiff's new evidence to be immaterial. Given that the Appeals Council did not need to provide any further substantive rationale for its decision, the Court finds no error.

Further, Plaintiff failed to show that there is a reasonable probability that the new evidence would have changed the administrative result. *Washington*, 806 F.3d at 1321

10

(quotation and citation omitted). As stated by the Commissioner, Plaintiff simply restated her argument that her ability to work on a regular scheduled was limited by her alleged medically necessary visits to the emergency room and hospitalizations. Plaintiff points to treatment records from June and July 2017, in which Plaintiff visited the emergency room on three occasions. On June 19, 2017, Plaintiff underwent a cystoscopy with stent placement aimed to help Plaintiff to discard a kidney stone (Tr. 114, 121). On June 26, 2017, Plaintiff visited the hospital again and underwent fragmenting of a kidney stone through lithotripsy extracorporeal shockwaves (Tr. 105). On July 7, 2017, Plaintiff visited the hospital once again for right flank pain. She stayed at the hospital overnight for observation. The medical notes stated that no kidney stones remained. As a result, her stent was removed and Plaintiff was discharged the following day (Tr. 93–102; 118–19). Overall, it appears that Plaintiff spent between 4 to 5 days at the hospital, but her issues were resolved. While Plaintiff's new evidence may relate to her chronic kidney disease, it does not support a finding that Plaintiff's kidney stones will recur in the future and that such condition can only be treated with unscheduled visits to the emergency room. *See Hobson v. Colvin*, No. 4:13-CV-00187-TMP, 2014 WL 4686383, at *10 (N.D. Ala. Sept. 19, 2014) (rejecting a plaintiff's argument that her problems with kidney stones would cause her to accrue more than an average of one absence from work per-month noting that although her medical records indicated a history of kidney stones, they did not indicate that the plaintiff was fated to always suffer from kidney stones). Plaintiff's new treatment notes; therefore, provide no new basis to reject the ALJ's decision.

### III.  Dr. Brian McIntyre's Opinion

Plaintiff argues that the ALJ's decision to give significant weight to Dr. McIntyre's opinion is not supported by the record because Dr. McIntyre reviewed only records that predated her alleged onset date—January 5, 2015 (Doc. 25 at 18). The Commissioner, on the other hand, argues that Dr. McIntyre had no choice but to review Plaintiff's claim for benefits based on medical records predating her application for DIB and SSI because her application was dated only ten days after her alleged onset date. Additionally, the Commissioner argues that Plaintiff failed to show how the ALJ's actions were prejudicial to her claim because the ALJ's RFC assessment included limitations equal to or greater than the limitations opined by Dr. McIntyre (Doc. 25 at 18–19).

The opinions of agency psychological consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source. 20 C.F.R. §§ 404.1513a(b), 416.913a(b). State agency medical and psychological consultants are "highly qualified and experts in Social Security disability evaluations." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). The ALJ considered Dr. McIntyre's opinion and gave significant weight to his evaluation of Plaintiff's mental impairments. Specifically, Dr. McIntyre's opinion that Plaintiff was capable of "complete simple, repetitive tasks" (Tr. 31). However, the ALJ did not solely rely on Dr. McIntyre's opinion in assessing Plaintiff's mental limitations. For example, the ALJ considered the opinion of Dr. Pauline Hightower, who found that Plaintiff's mental impairments posed no more than a mild degree of limitations (Tr. 579–91). The ALJ also considered Plaintiff's testimony regarding her mental limitations and their negative effects on her

ability to work, but discredited her testimony based on Plaintiff's work history, activities of daily living, and mental status exams showing normal findings (Tr. 26, 905, 907, 909, 911, 913). Therefore, even if Dr. McIntyre did not review all of Plaintiff's medical records before rendering an opinion or offering a RFC assessment, the ALJ had access to the entire record, including Plaintiff's testimony, and was able to determine whether Dr. McIntyre's opinion is supported by and consistent with the evidence of record. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony). Consequently, the Court finds no error as to this issue.

### IV. Effects of the Combination of Impairments

Plaintiff argues that the ALJ failed to consider the combined effects of Plaintiff's impairments of obesity, chest pains, and anxiety (Doc. 25 at 20). The Commissioner argues that Plaintiff failed to explain how Plaintiff's named impairments in combination cause limitations greater than the limitations assessed by the ALJ (Doc. 25 at 21).

It is well established that in reaching a disability determination, an ALJ "must consider the combined effects of a claimant's impairments." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). Despite Plaintiff's arguments to the contrary, the ALJ considered all medical evidence in combination when concluding that Plaintiff was not disabled. To begin, at steps three and four of the sequential evaluation process, the ALJ stated that Plaintiff "does not have an impairment or combination of impairments that

meets" the listings, and that Plaintiff's RFC had been assessed "with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments" (Tr. 25, 27). Those statements are enough to demonstrate that the ALJ considered all necessary evidence and impairments in combination. *See Tuggerson-Brown v. Commr. of Soc. Sec.*, 572 F. App'x. 949, 951–52 (11th Cir. 2014).

V.  **Plaintiff's Mental Impairments**

Plaintiff argues that the ALJ erred by relying on Plaintiff's work history to find that Plaintiff's mental impairments were not severe and that Plaintiff's mental condition was not worsening (Doc. 25 at 21–22). Additionally, Plaintiff contends that the evidence on record, including treatment notes from Direction for Living and Dr. McIntyre, reflects that her mental condition has worsened. Finally, Plaintiff argues that the ALJ erred by failing to provide weight to Plaintiff's treating sources at Directions for Living, who consistently recorded that her anxiety level was high. The Commissioner counters that Plaintiff failed to provide any medical evidence establishing her allegations, instead relying on her own subjective complaints. Thus, substantial evidence supports the ALJ's RFC determination. The Commissioner does not address Plaintiff's last argument (Doc. 25 at 22–23).

The ALJ's assessment of Plaintiff's mental limitations is supported by substantial evidence. As previously discussed, the ALJ properly relied on Plaintiff's work history in assessing her testimony that she was unable to work due to her anxiety and depression. Indeed, any work that a claimant performs during any period in which the claimant alleges disability, even if the work does not rise to the level of substantial gainful activity, may

14

demonstrate that the claimant maintains the ability to perform work at the substantial gainful activity level. *See* 20 C.F.R. § 404.1571. Accordingly, the ALJ did not err in considering the work Plaintiff performed during the relevant time period as such work weighed against a finding that Plaintiff's subjective complaints were credible. Further, even if the record demonstrates that Plaintiff worked for forty-five employers in a sixteen-year period because she was constantly fired for her work absences, Plaintiff points to no objective or medical evidence establishing that those absences were the result of Plaintiff's medically determinable impairments.

As to Plaintiff's claims of worsening mental impairments, the medical notes from her mental health providers show that Plaintiff's cognitive function is within normal limits; her thought processes are logical and coherent; and her insight and judgment are within normal limits (Tr. 26, 905, 907, 909, 911, 913). In other words, the medical records do not support limitations exceeding those found by the ALJ in his RFC assessment.

Finally, Plaintiff claims that in assessing her mental impairments, the ALJ failed to weigh the opinion of her treating sources at Directions for Living.[3] An ALJ "must state with particularity" the weight accorded to the medical opinions in the record and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (citation omitted). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731,

---

[3] Plaintiff does not identify any of these medical sources by name.

735 (11th Cir. 1981)). Here, the ALJ's failure to state with particularity the weight given to Plaintiff's treating sources at Directions of Living constitutes an error.

Nevertheless, the Court concludes that the ALJ's failure to accord weight to these sources is harmless because the opinions do not directly contradict the ALJ's RCF findings. *See Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to discuss weight given to physician's opinion constituted harmless error when the opinion did not contradict the ALJ's finding and was substantially similar to that of another doctor whose opinion was given substantial weight); *Wright v. Barnhart*, 153 F. App'x 678, 684 (finding harmless error where the ALJ failed to explicitly state what weight he afforded to a number of physicians' medical opinions where none of those opinions directly contradicted the ALJ's findings). In fact, in reaching Plaintiff's mental limitations assessment, the ALJ explicitly considered Plaintiff's treatment sources notes and found that such notes supported her finding that Plaintiff had only moderate limitations with concentration, persisting, or maintaining pace (Tr. 26). In other words, rather than contradicting the ALJ's findings, the medical notes from Directions for Living support the ALJ's disability determination. Therefore, the ALJ's failure to explicitly articulate the weight afforded to Plaintiff's treating physician's opinions at Directions for Living does not warrant remand.

## CONCLUSION

The ALJ's decision was supported by substantial evidence and employed the proper legal standards. In addition, the Appeals Council properly considered the new evidence produced after the ALJ's decision. Accordingly, it is hereby

16

ORDERED:

1. The decision of the Commissioner is Affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

ORDERED in Tampa, Florida, on September 9, 2019.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE